**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CSX TRANSPORTATION, INC.,
    500 Water Street,
    Jacksonville, FL 32202

                Plaintiff,

v.

BROTHERHOOD OF MAINTENANCE OF
WAY EMPLOYES DIVISION OF
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS,
    26555 Evergreen Road, Suite 200,
    Southfield, MI 48076

and

ALLIED FEDERATION –
BROTHERHOOD OF MAINTENANCE OF
WAY EMPLOYES DIVISION OF
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS
    111 Imperial Blvd. C-300,
    Hendersonville, TN  37075

and

DENNIS R. ALBERS
    General Chairman
    111 Imperial Blvd., C-300
    Hendersonville, TN 37075

and

ALLIANCE SYSTEM FEDERATION –
BROTHERHOOD OF MAINTENANCE OF
WAY EMPLOYES DIVISION OF

Case No. _____

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS
    9835 South AVE., Unit #2
    Poland, OH 44514

and

JASON E. GRAHAM
    General Chairman
    9835 South AVE., Unit #2
    Poland, OH 44514

                    Defendants.

## VERIFIED COMPLAINT FOR
## <u>DECLARATORY AND INJUNCTIVE RELIEF</u>

### INTRODUCTION

1.      Plaintiff CSX Transportation, Inc. ("CSXT") brings this civil action for declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq*., against Defendants Brotherhood of Maintenance of Way Employes Division of International Brotherhood of Teamsters ("BMWED"), Allied Federation-BMWED and its General Chairman Dennis Albers, and Alliance System Federation-BMWED and its General Chairman Jason Graham (collectively "Defendants" or "Union"). Defendants are threatening to engage in an unlawful work stoppage or other economic force against CSXT over a "minor dispute" within the meaning of the RLA. Defendants claim that CSXT is violating the parties' collective bargaining agreement ("CBA") through its use of the TIMEtrax time keeping system because, according to Defendants, TIMEtrax has led to payroll discrepancies and errors.

Because this dispute implicates application and/or conflicting interpretations of the parties' CBA, it is a "minor dispute" that must be resolved through conferences between the parties and binding arbitration. Work stoppages over minor disputes are forbidden by law.

2.      Indeed, Defendant Allied Federation-BMWED already unsuccessfully raised this same complaint when it challenged CSXT's adoption of TIMEtrax in 2021. In that case, Allied Federation-BMWED argued that the adoption of TIMEtrax constituted a major dispute under the RLA, because among other things, TIMEtrax had allegedly caused payroll "discrepancies." Despite those arguments, the U.S. District Court for the Western District of Kentucky held that CSXT's adoption of TIMEtrax and the operation of that system was a minor dispute under the RLA. *Allied Fed'n, Bhd. of Maint. of Way Emps. Div. of Int'l Bhd. of Teamsters v. CSX Transp., Inc.*, No. 3:21-CV-00013, 2022 WL 1156982 (W.D. Ky. Apr. 19, 2022).

## PARTIES

3.      Plaintiff CSXT is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal offices located at 500 Water Street, Jacksonville, Florida 32202.  CSXT is a common carrier by railroad engaged in interstate commerce and is a "carrier" within the meaning of the RLA § 1, First, 45 U.S.C. § 151, First.  CSXT's railroad system encompasses about 20,000 route miles in 26 states, including this judicial district, the District of Columbia, and two Canadian provinces.

4.     Defendant BMWED is an unincorporated association and a labor union. BMWED is a representative within the meaning of the RLA, 45 U.S.C. § 151, Sixth, and represents CSXT's maintenance-of-way employees. BMWED's members are part of the "non-operating" crafts or classes of railroad employees, along with CSXT's mechanical employees, clerks, signalmen, communications workers, among others. The CSXT employees represented by BMWED build and maintain tracks, bridges, buildings and other structures across CSXT's system. BMWED's principal place of business is 26555 Evergreen Road, Suite 200, Southfield, Michigan 48076-4225. By and through its officials and officers, BMWED conducts its business and acts for its members and other employees it represents in this judicial district.

5.     Defendant Allied Federation-BMWED is a division of BMWED, which represents a portion of BMWED's members employed by CSXT. Allied Federation-BMWED's principal place of business is 111 Imperial Blvd Suite C-300, Hendersonville, Tennessee 37075.

6.     Defendant Dennis Albers is Allied Federation-BMWED's General Chairman. General Chairman Albers is named in his official capacity as an officer of BMWED. His principal place of business is 111 Imperial Blvd Suite C-300, Hendersonville, Tennessee 37075.

7.     Defendant Alliance System Federation-BMWED is a division of BMWED, which represents a portion of BMWED's members employed by CSXT.

Alliance System Federation-BMWED's principal place of business is 9835 South Ave., Unit #2 Poland, Ohio 44514.

8.      Defendant Jason Graham is Alliance System Federation-BMWED's General Chairman. General Chairman Graham is named in his official capacity as an officer of BMWED. His principal place of business is 9835 South Ave., Unit #2 Poland, Ohio 44514.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this civil action under 28 U.S.C. §§ 1331, 1337, and 1367 because this matter raises a question under the RLA, a federal law. Federal district courts have jurisdiction to issue injunctions enforcing arbitration and other requirements of the RLA.

10.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b).

## FACTS

11.      Plaintiff CSXT is party to a variety of CBAs with BMWED (and various other unions). Many of these agreements are express, written contracts. In addition, the parties' agreements include so-called "implied terms" which arise through past practice. Moreover, there are thousands of arbitration awards interpreting these agreements.

12.      CSXT retains all managerial rights to operate as its sees fit except to the extent is has surrendered such rights through its express or implied agreements.

13.    CSXT maintains a number of systems related to the scheduling, job bidding, time tracking, and payroll for its employees.  CSXT has always maintained the management right to unilaterally adopt and implement these systems, and has not negotiated with the unions that represent its employees before doing so.

14.    In 2016, CSXT began the process of adopting TIMEtrax, a time tracking system, for several crafts of its employees including its maintenance-of-way employees. As part of this process, CSXT made several presentations to BMWED's leadership regarding TIMEtrax, its advantages compared to CSXT's old time tracking system, and its plans for rolling that new system out to employees. Among those benefits, CSXT explained that TIMEtrax provided a better and simpler user experience compared to the old system, referred to as "Mainframe," which used old green-screen computers. CSXT also explained that TIMEtrax would improve timekeeping accuracy, reduce maintenance issues by making the system consistent across CSXT's non-operating crafts, improve time-off management, improve the accuracy of tracking and pay for overtime, and ensure consistent application of the work rules contained in the parties' CBA by allowing customization to incorporate pay variances applicable when employees perform different tasks (known as "arbitraries") that could not be applied automatically in the old Mainframe system.

15.    In October 2018, CSXT moved roughly 50 BMWED-represented employees at its Hamlet Track Panel Facility, Barboursville Bridge Shop, and its Bryan Park Repair Shop facilities from the Mainframe to TIMEtrax.

16.     On November 14, 2020, CSXT implemented TIMEtrax for its remaining maintenance-of-way employees.

17.     After TIMEtrax went into effect for all of BMWED's members employed by CSXT, the Union demanded that "CSXT immediately rescind" the program and negotiate with the Union regarding its adoption and implementation. The Union claimed that CSXT did not have the right to adopt and implement TIMEtrax without first bargaining with the Union.

18.     One of the reasons for BMWED challenge to CSXT's adoption of TIMEtrax was due to what BMWED alleged were rampant "payroll errors" caused by the new system.

19.     In a press release entitled "BMWED-IBT Suing CSX Railroad for Payroll Errors," the Union asserted that "TimeTrax has failed to accurately and equitably pay employees," and that its objective in bringing this suit is to obtain "a court order directing CSX to stop using the TimeTrax program until the bargaining parties have negotiated and reached agreement on how the program would work."

20.     Following the full rollout of TIMEtrax in November 2020, BMWED and its members began filing grievances pursuant to the RLA's minor dispute resolution process concerning alleged payroll errors associated with TIMEtrax. Those grievances were handled through the parties' usual claims handling process under their CBA.

21.     On January 8, 2021, BMWED filed a lawsuit in the U.S. District Court for the Western District of Kentucky, alleging that CSXT's adoption and implementation of TIMEtrax violated the parties' CBA.

22.     Among its allegation, BMWED alleged that "CSXT's unilateral implementation of its electronic payroll system has resulted in hundreds of payroll discrepancies as well as the imposition of numerous attendance infractions against the BMWE-Allied Federal represented employees."

23.     CSXT moved for summary judgment, arguing that the parties' dispute over TIMEtrax represented a minor dispute under the RLA. In its motion and reply, CSXT explained that BMWED's claims about alleged payroll discrepancies submitted pursuant to the parties' CBA's claim's handling process supported the conclusion that the disagreement over TIMEtrax was a minor dispute.

24.     On April 18, 2022, the District Court granted CSXT's motion, holding that the parties' dispute over TIMEtrax constituted a minor dispute under the RLA. *CSX Transp., Inc.*, No. 3:21-CV-00013, 2022 WL 1156982, at *9.

25.     Since the District Court in Kentucky held that the parties' disagreement over TIMEtrax was a minor dispute and dismissed the Union's lawsuit in 2022, BMWED and its members have continued to file grievances over TIMEtrax and alleged payroll errors due to that system pursuant to the parties' CBA and the RLA's minor dispute resolution procedures. Those grievances have been handled in the usual manner under the parties' CBA.

26.     On March 3, 2023, BMWED sent a letter to CSXT notifying the carrier of the Union's intent to engage in self-help over TIMEtrax. According to that letter, "CSXT's repeated failure to timely pay bargaining unit employees is in direct contravention of Rule 30 of the Parties' CBA."  That provision provides in relevant part that:

> (a) Employees will be paid off during regular working hours. Should the regular pay day fall on a holiday, they will be paid on the preceding work day.
>
> (b) Where there is a shortage equivalent to one day's pay or more in the pay of an employee, a voucher will be issued promptly upon request to cover the shortage.

Based on these alleged violations, the Union claims that CSXT has changed the terms and conditions of employment for these employees such that this constitutes a major dispute under the RLA.

27.     Pursuant to a prior court order, BMWED is required to provide at least 10 days' notice of any self-help, such as a strike.  The Union's March 3, 2023 letter, therefore, states that "the Federations hereby give ten (10) days' notice that if CSXT does not rectify the foregoing pay issues, the Federations will engage in a strike, work stoppage, and/or picketing against CSXT without further notice to it."

28.     On information and belief, the Defendants continue to threaten to and will use self-help over CSXT's use of TIMEtrax as early as March 13, 2023. The threatened self-help could take the form of strikes, picketing, sick-outs, slow-downs, or other use of economic force.

## THE THREATENED IRREPARABLE HARM

29.    The threatened work stoppages by Defendants against CSXT will, unless enjoined, cause substantial and irreparable harm to CSXT. CSXT is one of the nation's major freight railroads. CSXT has more than 22,000 employees and operates over 20,000 route miles of track in 26 states, the District of Columbia, and two Canadian provinces. It serves thousands of industrial and commercial customers. Moreover, CSXT provides a crucial link in the movement of freight between Canada and the United States. Any disruption of its operations would therefore have a serious impact on interstate and international commerce.

30.    The threatened work stoppage also threatens to cause substantial and irreparable harm to CSXT's customers and the general public. Defendants' threatened work stoppage would impede, disrupt, and block CSXT's rail operations across its multi-state system, preventing the railroad from completing essential shipments of cargo. This includes coal needed by coal-fired power plants, fertilizers and other products needed for agricultural production, chemicals required to produce potable water, and mail. Even a temporary work stoppage by Defendants against CSXT could lead to critical energy shortages and the loss of thousands of jobs in industries serviced by CSXT that would be both immediate and that would continue to ripple throughout the economy for months into the future. Thus, a work stoppage by Defendants would interfere with CSXT's ability to provide services essential to the public health and safety in the United States.

31.    BMWED's threatened use of self-help will also harm CSXT. Absent an injunction, the threatened work stoppage would deprive CSXT of the use of its tracks, facilities, and equipment, causing loss of revenue that cannot be recovered by other means. The threatened strike would also harm CSXT's other employees. Because a strike would shut down CSXT's operations, it would put CSXT's employees out of work for the duration of the strike.

32.    In addition, because CSXT interchanges traffic with other major railroads, a work stoppage by Defendants on CSXT's system would soon disrupt the operations of connecting railroads, including the four largest U.S. railroads. These disruptions could quickly impact rail traffic all across the country.

33.    Because of the scope of Plaintiff's operations, even a partial or temporary shutdown would have a drastic impact on large segments of the public and the national economy. Thus, the threatened strike has the potential to interfere with the nationwide transportation in interstate and international commerce.

34.    CSXT does not have an adequate remedy at law. Only the injunctive power of this Court can compel Defendants to honor its statutory obligations to follow the RLA's dispute resolution procedures and their collective bargaining agreements with CSXT. On information and belief, unless enjoined by this Court, Defendants will engage in their threatened unlawful work stoppage in violation of the RLA.

35.    Withholding injunctive relief from CSXT will cause greater harm to it than granting such relief will cause to Defendants. Indeed, Defendants will suffer

no harm because an injunction to follow the RLA's minor dispute procedures will merely enforce the statutory duty to comply with those procedures. Defendants are free to pursue those procedures and submit unresolved grievances to binding arbitration before a board of adjustment pursuant to Section 3 of the RLA, which can fashion an appropriate remedy should Defendants prevail.

## COUNT I
### (Injunction Under Section 3 First of the RLA)

36.    CSXT realleges and incorporate by reference as if fully set forth herein the allegations of paragraphs 1-35, above.

37.    A "minor dispute" under the RLA is any dispute arising out of a grievance or over the interpretation or application of the parties' collective bargaining agreements concerning rates of pay, rules, or working conditions. Such disputes are subject to conference between representatives and mandatory arbitration by specialized boards of adjustment. 45 U.S.C. §§ 152 Sixth, 153. Self-help is unlawful in the case of minor disputes.

38.    The Plaintiff and Defendants are engaged in a dispute over the interpretation and application of their express and implied agreements regarding the operation of TIMEtrax, its time keeping system. The Plaintiff maintains any disputes over the operation of CSXT's payroll systems and alleged resulting payroll discrepancies are minor disputes under the RLA that must be resolved by a board of adjustment under Section 3 of the RLA.

39.     To the extent that Defendants take a different view, it amounts to a dispute over the interpretation or application of agreements, which is a minor dispute subject to the mandatory and exclusive procedures of Section 3 First of the RLA, 45 U.S.C. § 153 First. The Plaintiff is entitled to a declaratory judgment to that effect.

40.     The threatened strike, work stoppage, or other self-help by Defendants over the dispute alleged above are unlawful and should be enjoined under Section 3 First of the RLA, 45 U.S.C. § 153 First.

## COUNT II
### (Injunction Under Section 2 First of the RLA)

41.     CSXT realleges and incorporate by reference as if fully set forth herein the allegations of paragraphs 1-35, above.

42.     Under Section 2 First of the RLA, railroad employees and the unions that represent them have a duty to "exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether rising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof." 45 U.S.C. § 152 First.

43.     In addition, to the extent that BMWED-represented employees attempt to engage in a job action or self-help without the authorization of the BMWED, the Defendants are required under Section 2 First of the RLA to exert

every reasonable effort to prevent the employees from doing so, including by imposing union discipline. 45 U.S.C. § 152 First.

44.    The strike, work stoppage, or other self-help threatened by the Defendants over the disputes referred to above violate the union's statutory obligation to "exert every reasonable effort" to settle disputes without interruptions of railroad transportation, under Section 2 First of the RLA, 45 U.S.C. § 152 First.

45.    The Defendants have failed to exert every reasonable effort to avert strikes or other disruptions to commerce. This also violates the Defendants' independent and separate duty under Section 2 First of the RLA to exert every reasonable effort to prevent and discourage the employees it represents from engaging in self-help.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asks for judgment against Defendants, and respectfully pray that the Court, as appropriate:

A.  Issue a Declaratory Judgment that:

1.  The parties' dispute over the operation of TIMEtrax including any alleged payroll errors, is a minor dispute, not a major dispute, within the meaning of the RLA; and

2.   Defendants may not lawfully strike, picket, engage in a work stoppage, sick out, or slowdown, threaten to do so, or otherwise exercise coercive self-help against Plaintiff, its operating rail subsidiaries and/or affiliates, or encourage others to do so as a result of the parties' present dispute.

B. Issue injunctive relief:

1.   Enjoin BMWED, its divisions and its officers, including but not limited to Allied Federation-BMWED and its General Chairman Albers and Alliance System Federation-BMWED and its General Chairman Graham, from calling, encouraging, or otherwise engaging in striking, picketing, engaging in a work stoppage, sick out, or slowdown, or otherwise exercising coercive self-help against Plaintiff, its subsidiaries and/or affiliates, or encouraging others to do so;

2.   Grant any appropriate temporary and preliminary injunctive relief against Defendants.

C. Award Plaintiff its costs and expenses incurred in this proceeding; and grant damages and such other and further relief as the Court deems just and proper.

# VERIFICATION

I, Eric Caruth, certify under penalty of perjury that I am the Director, Labor Relations – Engineering for CSX Transportation, Inc., that I am familiar with the matters stated in the foregoing Verified Complaint, and that the facts stated therein are true.

Executed on March 8, 2023.

Eric Caruth

Dated: March 9, 2023.                    Respectfully submitted,

                                         */s/ R. Eric Bilik*
                                         R. Eric Bilik (FL Bar No. 987840)
                                         ebilik@mcguirewoods.com
                                         Sean P. Walsh (FL Bar No. 0113162)
                                         swalsh@mcguirewoods.com
                                         MᴄGᴜɪʀᴇWᴏᴏᴅs LLP
                                         50 North Laura Street, Suite 3300
                                         Jacksonville, Florida 32202
                                         (904) 798-3200
                                         (904) 798-3207 (fax)

                                         Donald J. Munro*
                                         JONES DAY
                                         51 Louisiana Avenue, N.W.
                                         Washington, D.C. 20001
                                         Telephone: (202) 879-3939
                                         Facsimile: (202) 676-1700
                                         Email: dmunro@jonesday.com

                                         Aaron S. Markel*
                                         JONES DAY
                                         150 West Jefferson Avenue, Suite 2100
                                         Detroit, MI 48226
                                         Telephone: (313) 230-7929
                                         Facsimile: (313) 230-7997
                                         Email: amarkel@jonesday.com

                                         *Attorneys and Trial Counsel for Plaintiff*
                                         *CSX Transportation, Inc.*

                                         * application for Local Rule 2.01
                                         Special Admission forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, and served the foregoing via e-mail on the following:

David O'Brien Suetholz
Herzfeld Suetholz Gastel Leniski and Wall PLLC
515 Park Avenue
Louisville, KY 40208
Tel: (502) 636-4333
Email: DAVE@HSGLAWGROUP.COM

*/s/ R. Eric Bilik*
R. Eric Bilik